UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ANTHONY NUGENT,

   Defendant.

Crim. Action No. 91-559-02 (CKK)

MEMORANDUM OPINION

In 1993, Anthony Nugent was sentenced to life in prison after a jury found him guilty of

drug trafficking and firearms offenses stemming from his participation in a large-scale illegal drug

operation that occurred in Washington, D.C. and spanned from May 1983 through March 1991.

After serving approximately thirty-four years in prison, Mr. Nugent moves for a reduction in his

sentence based on Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391,

§404, 132 Stat. 5194. *See* Defendant's [2406] Supplemental Motion for Imposition of Reduced

Sentence Under Section 404 of the First Step Act ("Def.'s Mot."). The Government opposes Mr.

Nugent's Motion based on several grounds discussed herein. Upon consideration of the parties'

briefing, the applicable law, and the record therein, the Court will GRANT IN PART AND

DENY IN PART Defendant's Supplemental Motion for Imposition of a Reduced Sentence

Under Section 404 of the First Step Act.[1] A separate Order accompanies this Opinion.

---

[1] In connection with this Memorandum Opinion, the Court considered: (1) Defendant's
Supplemental Motion for Imposition of Reduced Sentence Under Section 404 of the First Step Act
("Def.'s Mot."), ECF No. 2406, and the exhibits attached thereto; (2) Defendant's Notice of
Supplemental Authority ("Def.'s Supp."), ECF No. 2407, and the exhibit attached thereto; (3) the
United States' Opposition to Defendant's Supplemental Motion for Imposition of Reduced
Sentence Under Section 404 of the First Step Act ("Govt. Opp'n"), ECF No. 2416, and the exhibits

1

# I. BACKGROUND

The Court includes below an overview of the relevant facts and procedural history pertaining to consideration of Mr. Nugent's motion.

## A. Procedural History

In 1991, Mr. Nugent was indicted along with 23 co-defendants on a multitude of charges arising from his involvement with the "R Street Crew." *See* Indictment, ECF No. 3; Superseding Indictment, ECF No. 115. Mr. Nugent was convicted and sentenced in June 1993 on multiple charges, but for purposes of the instant motion, the Court looks at the charges for the four counts on which the Government asserts that Mr. Nugent has not yet completed his sentence: (1) Count 4, Continuing Criminal Enterprise (life sentence); (2) Counts 7, 55, Second Degree Murder (15 years to life, concurrent);[2] and (3) Count 57, Using or Carrying a Firearm in Relation to a Drug

---

attached thereto; (4) Defendant's Reply in support of Supplemental Motion ("Def.'s Reply"), ECF No. 2420, and the exhibits attached thereto; (5) Defendant's Supplement (Def.'s Second Supp."), ECF No. 2424; and (6) the entire record in this case. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCrR 47(f).

[2] Count 7 charged Mr. Nugent, Mr. Kevin Williams-Davis, and Mr. Darryl Williams with the murder of Alton Clea, while Count 55 charged Mr. Nugent and Mr. Williams-Davis with the murder of Francis Scrivner. Regarding Mr. Clea, on the day of the murder, Leon Clea and Anthony Nugent [age 19] were involved in a fistfight stemming from a dispute over the sale of drugs and who controlled what territory, ending with Mr. Clea being chased away. Leon Clea and his brothers, Alton and Anton, returned later to the same area to retaliate, and Mr. Nugent became involved in another fistfight with Leon Clea. With a gun that belonged to Kevin Williams-Davis, Darryl Williams "walked over to Alton Clea, put the gun in his face, and pulled the trigger," and Clea "died on the scene." Govt Opp'n, ECF No. 2416, at 6 (citing PSR at 22); *see also United States v. William-Davis*, 90 F.3d 490, 498 (D.C. Cir. 1996). Regarding Mr. Scrivner, Mr. Nugent [age 23] approached an auto body shop and fired repeatedly at Fred Bailey, an individual who was hurt but not killed. After Mr. Bailey ran into an office inside the auto body shop, Mr. Nugent and other unidentified people also ran into the shop and began shooting. Mr. Scrivner, an employee of the shop, was struck by a bullet and killed. Govt Opp'n, ECF No. 2416, at 7 (citing PSR at 24-25); *see also Williams-Davis*, 90 F.3d at 498. The Government asserts that "while [Mr. Nugent] did not fire the fatal shots, he provoked both disputes that led to the murders, headed the brutal assault on an autobody shop where Scrivner died, and attempted to kill others at the same time by shooting them at pointblank range." Govt Opp'n, ECF No. 2416, at 39-40.

Trafficking Offense (5 years, consecutive).[3]

In June 1993, Mr. Nugent appealed his conviction and sentence, and in July 1996, the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") affirmed, apart from vacating Mr. Nugent's second Section 924(c) conviction. *United States v. Williams-Davis*, 90 F.3d 490 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1128 (1997). Mr. Nugent has filed several post-conviction motions, including a motion for compassionate release that was subsequently withdrawn. *See* May 17, 2023 Notice of Withdrawal, ECF No. 2418.

B. Co-Defendants

The evidence at trial identified Anthony Nugent, Kevin Williams-Davis, and Darryl Williams as leaders of the R Street Crew. *Williams-Davis*, 90 F. 3d at 494; PSR at 12. Defendant indicates that Kevin Williams-Davis was convicted of, *inter alia*, the same Counts 4, 7, 13, and 39, as Anthony Nugent, and Darryl Williams was convicted of, *inter alia*, Counts 4, 7, and 13. Def.'s Mot., ECF No. 2406, at 9. Both Kevin Williams-Davis and Darryl Williams were sentenced to life imprisonment, as were co-Defendants McKinley Board, Andre P. Williams, Gregory Thomas, Derrin A. Perkins, and Donnell O. Williams, but of those sentenced to life, "only Mr. Nugent remains imprisoned." *Id.* For example, the sentences of Kevin Williams-Davis and McKinley Board were reduced to time served pursuant to Section 404 of the First Step Act, *see* ECF No. 2376 (Oct. 8, 2021); ECF No. 234 (Oct. 27, 2020), while Darryl Williams' sentence was reduced to time served upon grant of his motion pursuant to 18 U.S.C.

---

[3] The Government notes that "Defendant has completed the prison sentences imposed on his other counts of conviction, *see* Gov't Ex. 1: Sentence Computation Data (Apr. 13, 2023), and does not seek a reduction on those sentences." Govt. Opp'n, ECF No. 2416, at 2 n.2.

§ 3582(c)(1)(A). *See* ECF No. 2382 (Nov. 9, 2021); ECF No. 2386 (Dec. 13, 2021). Andre Williams had a life sentence and received an agreed sentence reduction to 300 months. *See* Tr. of Kevin Williams-Davis Sept. 13, 2021 Mot. Hrg., ECF No. 2379, at 23 (noting this). Regarding Gregory Thomas, "[t]he Government agreed to 350 months by stipulation of a reduced sentence for him." *Id.* at 24. Donnell Williams had a life sentence that was reduced to 292 months, "under *Booker*, the Supreme Court case regarding the sentencing guidelines changes." *Id.* Derrin Perkins had a life sentence that was reduced after "[h]e filed a motion under [Section] 3582, which the Government did not oppose, and he was released after 360 months of service in prison." *Id.* In the instant case, Mr. Nugent moves to have his sentence on all counts reduced to time served.

## II. LEGAL STANDARD

Congress enacted the Fair Sentencing Act in 2010, with the goal of "restor[ing] fairness to federal cocaine sentencing." *See* Fair Sentencing Act, PL 110-220, 124 Stat 2372 (August 3, 2010). Section 2 of the Fair Sentencing Act attempted to reduce the disparity in sentencing between offenses involving crack cocaine and powder cocaine by increasing the quantity of crack cocaine required to trigger § 841(b)(1)(A)'s penalties from "50 grams" to "280 grams" and § 841(b)(1)(B)'s penalties from "5 grams" to "28 grams." *Dorsey v. United States*, 567 U.S. 260, 264, 269 (2012). Initially, the Fair Sentencing Act was not applied retroactively to people sentenced before its enactment, but Section 404 of the First Step Act gave retroactive effect to changes made by Sections 2 and 3 of the Fair Sentencing Act. Section 404 states as follows:

> (a) DEFINITION OF COVERED OFFENSE – In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.
> (b) DEFENDANTS PREVIOUSLY SENTENCED – A court that imposed a sentence

for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

(c) LIMITATIONS – No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by Section 2 and 3 of the Fair Sentencing Act of 2010. . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act, Pub. L No. 115-391, § 404 (2018). To summarize, the Court's authority to reduce a sentence pursuant to Section 404 applies to (1) federal offenses (2) committed before August 3, 2010 (3) for which the Fair Sentencing Act changed the statutory penalty range (such as crack cocaine offenses). *See* First Step Act § 404(a).

In *United States v. Michael Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022), the D.C. Circuit explained the two-step process for evaluating First Step Act claims that was set forth in *United States v. Antoine White*, 984 F.3d 76 (D.C. Cir. 2020). "First, under section 404(a), the court must determine whether a defendant is eligible for relief – that is, whether the movant committed a 'covered offense.'" *Palmer*, 365 F.4th at 850 (quoting First Step Act § 404 (a)). "Second, under section 404(b), a 'court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'" *Id.* (quoting First Step Act § 404 (b)).

The D.C. Circuit has indicated that the sentencing factors in 18 U.S.C. § 3553(a) [such as the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense] are important considerations for determining whether a sentence reduction is warranted. *United States v. White*, 984 F.3d 76, 90-91 (D.C. Cir. 2020). Additionally, courts look at whether a currently imposed sentence remains "sufficient, but not greater than necessary, to

fulfill the purposes of § 3553(a)" by considering "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *White*, 984 F.3d at 90 (internal quotation marks and citations omitted). Courts also consider and weigh mitigating evidence presented by a defendant, including evidence of post-conviction conduct. *See id.* at 93.

The First Step Act does not mandate sentence reductions but instead, it leaves to the court's "broad discretion" whether to reduce the sentence. *United States v. Concepcion*, 142 S. Ct. 2389. 2404 (2022); *White*, 984 F.3d at 88 (quoting First Step Act § 404(c)) (affirming the principle that "[n]othing in the First Step Act § 404 "shall be construed to require a court to reduce any sentence pursuant to this section.")  While courts have "broad discretion to assess motions for sentence reductions," such discretion is not "unfettered." *Id.*

### III. ANALYSIS

The parties' arguments may be summarized as follows: Defendant claims that his [super] CCE offense is a "covered offense" under Section 404 of the First Step Act, Def.'s Mot., ECF No. 2406, at 11-14, and further, that the "sentencing package" doctrine may be applied by the Court to reduce his sentences on all other counts. *Id.* at 14-16.  Defendant contends that if sentenced today, Mr. Nugent would face a lower statutory penalty and a "markedly" lower Guideline range. *Id.* at 19-25.  Defendant notes also the sentence disparity between Mr. Nugent and his co-defendants, all of whom have been released through compassionate release or other means.  *Id.* at 25.  Finally, Defendant points to his history and characteristics, alleged rehabilitation, and his reentry plan. *Id.* at 26-41.

The Government acknowledges that the [super] CCE conviction is a "covered offense" but argues that the Court cannot resentence Defendant to less than a mandatory life sentence due

to the quantities of PCP and powder cocaine distributed.  Govt. Opp'n, ECF No. 2416, at 17-32.

The Government asserts that the Section 924(c) and the second-degree murder convictions are

not covered offenses, *id.* at 15-16, and it disputes application of the "sentencing package"

doctrine. *Id.* at 33-38.  Finally, the Government alleges that the statutory sentencing factors do

not favor release. *Id.* at 39-43.  These arguments and counterarguments will be addressed herein.

As previously noted, there is a two-step process for analyzing claims for resentencing under the

First Step Act, and this Court turns now to Defendant's eligibility for resentencing.

A. Eligibility

Defendant asserts that his Count 4 conviction for Continuing Criminal Enterprise is a

"covered offense," which is defined as "a violation of a Federal criminal statute, the statutory

penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010. . ." that

was committed before August 3, 2010."  First Step Act § 404(a).  Section 404 allows courts to

impose a reduced sentence "as if" the reduced crack cocaine penalties established by Sections 2

and 3 of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, had been in effect "at

the time of the commission of the offense, not at the time of the original sentencing," *Concepcion*

*v. United States,* 142 S. Ct. at 2402.

1. Continuing Criminal Enterprise ("CCE")

As a preliminary matter, Defendant notes that all of his co-defendants were charged under

Count 3 with conspiracy to distribute five (5) kilograms or more of cocaine, one (1) kilogram or

more of PCP, fifty (50) grams or more of cocaine base (crack), one hundred (100) grams or more

of heroin, and a detectable amount of marijuana, *see* Superseding Indictment, ECF No. 115, at

68-70, and for Mr. Nugent, Count 3 was merged into Count 4 (criminal enterprise).  Count 4 –

which carried a potential sentence of life without parole – alleged that co-defendants Anthony

7

Nugent, Kevin Williams-Davis, and Darryl Williams operated a "continuing criminal enterprise," which involved the distribution of 150 kilograms or more of cocaine, 30 kilograms or more of PCP, and 1.5 kilograms or more of crack. *See* Superseding Indictment, ECF No. 115, at 70-72; *see* 21 U.S.C. §848(b)(2)(A) (mandating life imprisonment for a "super CCE conviction" if a defendant was an organizer or leader of the CCE, *see* §848(b)(1), and the violation "involved at least 300 times the quantity of a substance defined in subsection 841(b)(1)(B) of this title').[4] The Government agrees that Defendant's super CCE conviction is a covered offense.

Defendant asserts that even if the statutory penalties for PCP and cocaine were not altered, this does not change the fact that Count 4 is a covered offense. Def.'s Mot., ECF No. 2406, at 13. Defendant notes that Section 404 neither references actual conduct nor sentencing ranges, but instead refers to "statutory penalties," and thus, it is immaterial if the statutory range on Count 4 (based on PCP and cocaine) remains the same. "By conditioning eligibility on the movant's offense, rather than on his actual conduct or the applicable sentencing range, the First Step Act casts a wide net at the eligibility stage." *United States v. Taylor*, 982 F.3d 1295, 1300 (11th Cir. 2020). Where you have a multi-object offense, "the argument that eligibility requires that there be a change in the statutory range resulting from considering all objects of the conspiracy is adding language to what Congress stated in simple terms." *United States v. Winters,* 986 F.3d 942, 948 (5th Cir. 2021); *accord United States v. Gravatt,* 953 F.3d 258, 264 (4th Cir. 2020) (disallowing multi-object conspiracies' eligibility would "impose an additional limitation to the Act's applicability").

Accordingly, because the Fair Sentencing Act "modified" the statutory penalties of this "[f]ederal criminal statute," and Defendant's offense occurred prior to August 3, 2010, this Court

---

[4] This contrasts with 21 U.S.C. § 848(a) where a person convicted of CCE may be sentenced to a term of imprisonment between 20 years and life.

finds that Mr. Nugent is eligible for relief under the First Step Act on his conviction for Continuing Criminal Enterprise for which he received a life sentence. *United States v. Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022) (holding that "Super" CCE is a covered offense). Furthermore, that Count 4 involved a multi-drug conspiracy does not make it ineligible, as has been concluded by multiple appellate courts and in the cases of Mr. Nugent's co-defendants. To be eligible for relief, "[t]he First Step Act does not require [Mr. Nugent] to show that the Fair Sentencing Act reduced [his] penalties" insofar as the "statutory penalties for" one object of the conspiracy "were modified by" the Fair Sentencing Act. *United States v. Spencer*, 998 F.3d 843, 845-846 (8th Cir. 2021) (citing *Taylor*, 982 F.3d at 1300-1301); *United States v. Gravatt*, 953 F.3d at 264 (dual-object conspiracy to distribute both crack and powder cocaine is a covered offense); *see also* Tr. of Kevin Williams-Davis Mot. Hrg., ECF No. 2379, at 21 (adopting reasoning in *Gravatt*) (" A defendant convicted based upon a multidistrict drug conspiracy is eligible under 404 and under the First Step Act, provided at least one of the drugs was crack cocaine, for which the statutory penalties have been modified by the Fair Sentencing Act.")

a. Mandatory Miniums based on Quantities of Drugs other than Crack

The Government asserts that "[t]he fact that defendant's [super] CCE conviction qualifies as a "covered offense" is ultimately immaterial to the outcome of the motion, as the Court does not possess authority to resentence him to less than life imprisonment on the CCE count under § 404." Govt. Opp'n, ECF No. 2416, at 15, n.6. More specifically, the Government argues that "defendant was responsible for quantities of PCP and powder cocaine far above the statutory thresholds that triggered a mandatory minimum of life imprisonment under the Super CCE provision." Govt. Opp'n, ECF No. 2416, at 17. Accordingly, "[t]he mandatory minimum of life imprisonment due to PCP and powder cocaine would apply to him even if the Fair Sentencing Act were in effect when

he committed the offense, [and] [t]he Court cannot resentence him below this mandatory minimum." *Id.* This is because "§404(b) still requires that any new sentence comply with the *other* drug's mandatory minimums." Govt. Opp'n, ECF No. 2416, at 19 (emphasis added); *see also* cases string cited at 19, n. 12 (citing cases from other circuits); at 20 (acknowledging that the "D.C. Circuit has not addressed this issue in depth"). The Government asserts that courts must "look to the statutes implicated by the other objects of a multi-object conspiracy offense in order to determine whether the statutory mandatory minimum sentences required on the other objects of the offense would preclude a sentence reduction under the First Step Act." Govt. Opp'n, ECF No. 2416, at 19-20 (quoting *United States v. Reed*, 7 F.4th 105, 113 n.4, 115-116 (2d Cir. 2021) (citation omitted)).

Defendant rebuts this assertion by the Government. First, Defendant argues that the Government's Section 404 inquiry incorrectly "proceeds *not* in two steps but in three: (1) whether an individual has a covered offense; (2) whether the defendant can be resentenced at all considering only the Fair Sentencing Act changes (the "as if" step); and only if the answer is yes to (2); (3) whether the district court in its discretion will do so, considering the intervening changes in law and fact." Def.'s Reply, ECF No. 2420, at 2 (referencing Govt. Opp'n). This is at odds with the D.C. Circuit's decision in *United States v. White*, which set out two steps only: (1) whether there is a "covered offense;" and (2) the court's exercise of "broad discretion" to decide "whether it should reduce the sentence." *United States v. Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022) (discussing the two steps set out in *White).*

As noted correctly by Defendant, this extra step inserted by the Government was discussed by the D.C. Circuit, which rejected the district court's finding that "relief is categorically barred unless, using defendant-specific drug quantities, the Fair Sentencing Act would have altered the

10

statutory penalties applicable to a defendant." *White*, 984 F.3d at 86 (quoting the district court's

decision in *United States v. White*, 413 F. Supp. 3d at 50). The D.C. Circuit held instead that "[t]he

District Court's limitation ha[d] no basis in the text of section 404(b)." *White*, 984 F.3d at 87. "The

plain language of section 404(b) d[id] not require the court to determine what effect the Fair

Sentencing Act 'would have had' on a defendant's sentence at the time it was originally imposed."

*Id.* "If a defendant committed a "covered offense" under section 404(a) and neither of the

limitations in section 404(c) apply, relief under section 404(b) [was] available even if the Fair

Sentencing Act did not modify the statutory range for the specific drug quantity attributed to the

defendant." *Id.*[5]

Furthermore, Defendant asserts that the argument presented by the Government – that

because nothing in Section 404 changed the quantities of other drugs involved in the offense means

this Court is bound by a mandatory life sentence – runs contrary to the holding in *Concepcion,*

where once there is a covered offense, "the First Step Act allows district courts to consider

intervening changes in law . . . in exercising their discretion to reduce a sentence[.]" Def.'s Reply,

ECF No. 2420, at 4, citing *Concepcion v. United States*, 142 S. Ct. at 2402 (2022).[6] Defendant

---

[5] The *White* decision did not address the significance of a defendant being charged with quantities of other narcotics such as PCP, nor the effect of mandatory minimums, except to note that the district court had discretion to impose a reduced sentence as low as five years, which was the mandatory minimum that applied as if the Fair Sentencing Act were in effect for Counts 1 [cocaine base] and 5 [RICO violation], and 0 years for Count 18 [crack cocaine]. *White*, 984 F.3d at 86.

[6] Defendant notes further that, although the decision in *Concepcion* was announced after Judge Hogan made his ruling reducing the sentence in [co-defendant] Williams-Davis's case, the Government now "claims it was wrong in Williams-Davis's case to concede that the Court could reduce his CCE sentence, and [it] has changed its position 'after further consulting Department of Justice guidance and the case law[.]'" Def.'s Reply, ECF No. 2420, at 5 (quoting Govt. Opp'n, ECF No. 2406, at 17, n.10). According to the Defendant, the "government's position here is, in fact, entirely consonant with the *dissent* in *Concepcion,*" Def.'s Reply, ECF No. 2420, at 5, where Justice Kavanaugh indicated that he "would conclude that the First Step Act authorizes district

explains that changes in law since his original sentencing mean that his super CCE count would not result in a mandatory life sentence today, in part because "*Apprendi* and *Alleyne* made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury or pleaded to by the defendant." Def.'s Reply, ECF No. 2420, at 6; *see Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (defendant has a right to have a jury determine facts that change the statutory sentencing range); *see also Alleyne v. United States*, 570 U.S. 99, 108 (2013) (defendant has a right to have a jury determine all facts that increase a mandatory minimum sentence); *United States v. Stoddard*, 892 F.3d 1203, 1208 (D.C. Cir. 2018) (applying *Apprendi* to drug-quantity-based mandatory minimums, a defendant has a right to have a jury find the drug quantity attributable to him on an "individualized" basis). *See Concepcion*, 142 S. Ct. 2389, 2404 (2022) ("hold[ing] that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.")[7]

    b.  Determining Drug Quantities for Mr. Nugent

In this case, with regard to Count 4, the Honorable George Revercomb, the trial court, instructed the jury that they "need only find that the requisite quantity of powder cocaine, PCP, and cocaine base was met by one of the three substances charged, but not all three." Def.'s Mot., ECF

---

courts to reduce a sentence based on changes to the crack-cocaine sentencing ranges, but not based on other unrelated legal or factual changes since the original sentencing [though] [t]he Court holds otherwise." *Concepcion*, 142 S. Ct. at 2407.

[7] The Government argues however that the Court may only exercise its broad discretion to select "a sentence within the range authorized by law," taking into account any mandatory minimums. Govt. Opp'n, ECF No. 2416, at 26 n.16 (quoting *Alleyne*, 570 U.S. at 117); *see also Apprendi*, 530 U.S. at 481 (noting that "discretion [is] bound by the range of sentencing options prescribed by the legislature").

No. 2406, at 5 (citing Trial Transcript, ECF No. 2365-2, at 86-93) (noting that the Government need not prove all three). More specifically, the jury was instructed that the Government had to prove beyond a reasonable doubt that "the enterprise was involved in distribution" of 150 kilograms or more of cocaine "and/or" 30 kilograms of PCP "and/or" 1.5 kilograms or more of crack. *See* Jury Instructions, ECF No. 2365-2, at 93.

The Government highlights however that the "CCE charge required the jury to find both a conspiracy to distribute drugs (charged in count 3 and later merged with the CCE count) and two other predicate acts." Govt. Opp'n, ECF No. 2416, at 7; *see Williams-Davis*, 90 F. 3d at 510. In this case, the predicate acts found by the jury were: possession with intent to distribute PCP and marijuana on August 13, 1987 (counts 13 and 14) and on October 21, 1988 (counts 39 and 40); however, these predicate act counts do not contain any indication of the amount of PCP and marijuana. *See* Verdict Form, ECF No. 2406-1, at 4. Moreover, the verdict form did not require the jury to make any special findings on which of the substances or what quantity it found beyond a reasonable doubt. *Id.* Accordingly, this Court agrees with Defendant's statement that "Mr. Nugent was sentenced to mandatory life imprisonment under 18 U.S.C.§848(b)(2)(A) on the basis of generalized findings as to the [ ] drug amounts and types," and Defendant asserts that this is in contravention of the principles set forth in *Apprendi, Alleyne,* and *Stoddard*. Def.'s Mot., ECF No. 2406, at 19.

The Government argues however that "there is no realistic chance that defendant's conviction rested solely on the attributable quantity of crack cocaine; [r]ather, this was a conspiracy focused on PCP and powder cocaine, selling crack cocaine only "on occasion." Govt. Opp'n, ECF No. 2416, at 23. In support thereof, the Government looks to the Presentence Report ("PSR") calculation of total drug quantities for purposes of Guidelines calculations, and asserts that by its

calculations, crack cocaine comprised only a small percentage of the total amount of drugs. *Id.* at

24. "Nor are there any indications in the record that the jury would have rested its "Super" CCE

conviction on crack cocaine." *Id.* at 25.

In response to that argument, Defendant proffers that there was no individualized finding

of drug quantities, but instead, the drug quantities attributable to Mr. Nugent must have been

determined by the trial court based on the PSR. Defendant notes that "the sentencing transcript

makes clear that the parties believed a sentence of life imprisonment was mandatory," even though

"neither Mr. Nugent's sentencing hearing nor the statement of reasons indicates that the Court

adopted the PSR generally or its drug amount finding specifically." Def.'s Mot., ECF No. 2406, at

21. Defendant argues that the PSR "included no individualized drug findings as to Mr. Nugent,

and instead concluded that 'the approximate total amount of drugs involved in this offense converts

to 1,152,109.80 kilograms of marijuana[.]'" Def.'s Mot., ECF No. 2406, at 21 (quoting the PSR

and noting that this was the "identical drug amount applied to several codefendants who received

mandatory life on Count 4.")[8]  Moreover, Defendant's "label as the leader of the conspiracy does

not obviate the need for the district court [to] make individualized findings regarding 'the scope of

his agreement to the conspiratorial conduct and the foreseeability of his co-conspirators' conduct.'"

*United States v. Palmer*, Case No. 89-cr-36-RCL-1, 2023 WL 2265255, at *6 (D.D.C. Feb. 28,

2023) (quoting *United States v. Wyche*, 741 F. 3d 1284, 1292 (D.C. Cir. 2014)).[9]  Accordingly,

---

[8] Despite Defendant's claim that identical language was used for several co-defendants, the
Government asserts that the PSR "concluded that [Nugent] was individually liable for the 'total
amount of drugs involved in this offense,' and used that total . . . to calculate his base offense
level." Govt. Opp'n, ECF No. 2416, at 29.

[9] In *Palmer*, 2023 WL 2265255, at *6-*7, the court noted that even while the "PSR plainly made
particularized findings regarding [the drug quantities attributable to the defendant]," because the
prior trial court, during sentencing, "did not explicitly adopt the PSR's findings," the court would
now "make an independent drug quantity finding."

Defendant contends, and this Court agrees, that Mr. Nugent was "sentenced to mandatory life based on a conspiracy-wide determination of drug quantity[.]"   Def.'s Mot., ECF No. 2406, at 21-22.

Defendant bolsters its argument that there was no individualized determination of drug quantity by referencing Judge Hogan's decision on Mr. Nugent's co-defendant, Darryl Williams, who was convicted of the same Count 4.  Def.'s Reply, ECF No. 2420, at 7-9.  Defendant performs a side-by-side comparison of the facts on these two cases regarding the jury instructions, verdict sheet, and PSR, and states that "against this identical backdrop," Judge Hogan explained:

> *Alleyne* and *Apprendi* require that any fact used to determine mandatory sentences must be found by a jury beyond a reasonable doubt.  *Stoddard* makes clear that a defendant's sentence must be based on an individualized determination of drug quantity.  *Stoddard*, 892 F.3d at 1219.  Mr. Williams' mandatory sentence did not comport with either of those dictates.  Instead, he was sentenced to mandatory life based on a conspiracy-wide determination of drug quantity – a fact that was determined by the Court based on a PSR, not by a jury acting on proof beyond a reasonable doubt.

> In *Stoddard,* the D.C. Circuit vacated defendants' sentences where the jury adopted the conspiracy-wide approach because "[h]ad the jury been properly instructed and given a proper verdict form, the outcome may well have been different." *Stoddard*, 892 F.3d 1222. That logic extends to Mr. Williams' case.  In Mr. Williams' case, too, the outcome would almost certainly have been different.  Had he had the benefit of *Alleyne*, *Apprendi* and *Stoddard*, to support a sentence of mandatory life the government would be required to prove, beyond a reasonable doubt, that Mr. Williams specifically was responsible for the entire quantity of drugs alleged in the indictment as attributable to the R Street Crew as a whole. Although he quite clearly faced and deserved, a lengthy period of incarceration, it is implausible that were he sentenced today he would have faced a mandatory life sentence.

Def.'s Reply, ECF No. 2420, at 8; *see also* Mem. Op. [granting compassionate release for Darryl Williams], ECF No. 2382, at 11.

In his Reply, ECF No. 2420, at 10, Defendant concludes, and this Court agrees, that "[j]ust as Judge Hogan found for both Williams-Davis and Darryl Williams, intervening changes in the

law mean that "[l]ike his co-defendants also convicted of Count 4, Mr. Nugent is no longer subject to [a] mandatory life [sentence]," Def.'s Reply, ECF No. 2420, at 10-1. Instead, his conviction "carries a mandatory minimum sentence of 20 years and a maximum of life imprisonment." 21 U.S.C. §848(a). Twenty years is "the correct mandatory minimum for [the Court] to use in deciding whether to impose a reduced sentence for [Mr. Nugent's] CCE offense under the First Step Act." *Palmer*, 2023 WL 2265255, at *5 (quoting *United States v. Palmer*, 35 F.4th 841, 852 (D.C. Cir. 2022)).[10] Accordingly, this Court rejects the Government's argument that it is bound by a mandatory life sentence and concludes that Defendant is eligible for resentencing on his CCE offense.

    2. Remaining Convictions under 18 U.S.C. §924(c) and the D.C. Code

    a. Conviction under 18 U.S.C. §924(c)

The Government argues that Defendant's Section 924(c) conviction for Using and Carrying a Firearm in Relation to a Drug Trafficking Offense is not a "covered offense" as it was unaffected by the enactment of the Fair Sentencing Act. Govt. Opp'n, ECF No. 2416, at 15-16; *see United States v. Sumler,* No. 95-cr-154-2, 2021 WL 6134594, at *5 n. 9 (D.D.C. Dec. 28, 2021) (citing *Terry v. United States*, 141 S. Ct. 1858, 1863 (2021) ("[T]he Fair Sentencing Act did not amend the penalty section of § 924(c), so it is not a covered offense under the First Step Act."); *see also United States v. Bruce Smith,* 828 Fed. Appx. 523, 525 (11th Cir. 2020) (affirming district court determination that § 924(c) convictions were not covered offenses even though they were

---

[10] The Government argues that allowing individuals like Defendant to receive reduced sentences would allow "windfalls" that are "illogical" and "absurd," compared to persons convicted on drug offenses with no crack cocaine. Govt. Opp'n, ECF No. 2416, at 20 n.13. Defendant asserts that the Supreme Court addressed this disparity argument in *Concepcion*, 142 S. Ct. at 2403, n.8 (noting that "disparities are always unavoidable when some, but not all, defendants are permitted to move for modifications of an original sentence"). Def.'s Reply, ECF No. 2420, at 10.

predicated on crack cocaine convictions that qualified as covered offenses); Govt. Opp'n, ECF No. 2416, at 16, n.7-8 (string citing additional cases). Defendant explains that he has not argued that his Section 924(c) conviction is a covered offense, nor is this necessary. Def.'s Reply, ECF No. 2420, at 11, n.2.

Defendant proffers multiple cases from this Court and other district courts involving Section 924(c) consecutive sentences, where the defendants' sentences were reduced to time served. *See, e.g., United States v. Wyche*, Case No. 89-cr-36-RCL-5, 2023 WL 130825, at *1-*2 (Jan. 9, 2023) (where defendant was also serving a life sentence on his drug offenses, and his sentence was reduced to 28 years); *see also* cases string cited by Defendant in its Reply, ECF No. 2420, at 14-15 (where the defendant received a sentence of time served [which including the time served for the §924(c) conviction] after having served less than the original sentence for the underlying drug offense at the time of the sentencing reduction). In *United States v. Williams-Davis*, 91cr559-01 (TFH), the Honorable Thomas Hogan noted the "various methodologies" presented regarding disposition of the Section 924(c) conviction, including sentencing a defendant to time served on combined counts, or that the mandatory minimum sentence is considered served first. Transcript of Motion Hearing for Co-defendant Kevin Williams-Davis, ECF No. 2379, at 8-9 (noting that "[t]he Court can look at it that way"), *see United States v. Mothersill*, 421 F. Supp. 3d 1313, 1316, n.4, 1320 (N.D. Fla. 2019) (citing 11th Circuit cases and finding that a mandatory minimum concurrent sentence for a §924(c) conviction may be served first), *United States v. Pittman*, No. 3:07-cr-277-J-32JBT, 2020 WL 364181, at *2 (M.D. Fla. Jan. 22, 2020) (same); *compare Wright v. United States*, 425 F. Supp. 3d 588, 597-98 (E.D. Va. 2019) (reducing stacked 924(c) sentence as part of the sentencing package in Section 404 proceedings).

Furthermore, Defendant points out that the Government takes a position in this case that

is inconsistent with the position taken in the case of Michael Wells, even though Mr. Wells was also convicted of a § 924(c) offense along with drug offenses.  See Gov't Resp. to Supp. Section 404 Mot. at 4, No. 01-cr-253-03 (RCL) ECF No. 730 (July 23, 2021) (noting that defendant was eligible for a sentencing reduction under Section 404, there was no objection to a reduction to time served, and no mention of [an obstacle because of] the 924(c) charge); Gov't Resp. to Order of the Court at 1, No. 01-cr-253-03 (RCL), ECF No. 749 (Dec. 2, 2022) (taking the same position even after *Concepcion* and an opportunity to supplement its briefing).  Defendant asserts that "[s]erious questions are raised when the sovereign itself takes inconsistent positions in two separate criminal proceedings against two of its citizens." *Bradshaw v. Stumpf*, 545 U.S. 175, 189 (2005) (Souter & Ginsberg, JJ., concurring).[11]

Accordingly, in this case, consistent with Judge Hogan's actions in co-defendant Kevin Williams-Davis's case, and because the statute does not specify in what order the sentences should run, this Court finds that Mr. Nugent's Section 924(c) conviction may be treated as having been served first, in which case it does not need to qualify as a "covered" offense.

b. D.C. Code Convictions for Second Degree Murder[12]

The Government argues that "Defendant's convictions for Second-degree Murder While Armed under the D.C. Code, Counts 7 and 55, are not covered offenses under §404," as they do not have a quantity of crack cocaine as an element of the offense nor were the statutory penalties

---

[11] In *United States v. Michael Wells*, Case No. 01-cr-253-RCL-3, 2023 WL 2784888, at *1 (Feb. 21, 2023), the Honorable Royce Lamberth granted the Defendant's request for a reduced sentence under the First Step Act. *See* Order for Sentence Reduction, ECF No. 756 (reducing the time from 300 months [25 years] to [the approximately 20 years of] time served, where this new sentence encompassed the defendant's drug charges as well as the §924(c) conviction).

[12] The Court notes that the sentence for the D.C. Code second-degree murder conviction is indeterminate insofar as it runs 15 years to life, with the possibility of parole, and Defendant in this case has served a 34-year sentence to date.

modified by the Fair Sentencing Act. Govt. Opp'n, ECF No. 2416, at 16-17. "Whether an offense is 'covered' under the First Step Act 'depends only on whether the defendant was convicted of an offense with a statutory penalty range that the Fair Sentencing Act altered.'" *United States v. Gerald Smith*, 104 F.4th 314, 332 (D.C. Cir. 2024) (citing *White*, 984 F.3d at 86). Defendant argues however that the sentence packaging doctrine may be applied to the second-degree murder charges, and the Court turns now to consideration of the sentence packaging doctrine.

(i) Sentence Packaging

Defendant argues that once the Court determines that a defendant is eligible for relief under Section 404, it has authority to reduce Mr. Nugent's sentence on both the covered and uncovered counts in defendant's sentencing package. Def.'s Mot., ECF No. 2406, at 16 (string citing various district court cases). In its Opposition, ECF No. 2416, at 33, the Government acknowledges that "in some instances, sentences on multiple counts may comprise a 'sentencing package,' so that attacking a sentence on some counts . . . reopens the sentence on the other counts as well." *United States v. Richard Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006) (quoting *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (emphasis omitted)). The Government explains that courts have reached conflicting answers as to whether a court may impose a reduced sentence under Section 404(b) on: (1) only covered offenses, even if grouped with non-covered offenses, *see, e.g., United States v. Young*, 998 F.3d 43, 55 (2d Cir. 2021); (2) all offenses resulting in "a single, aggregate sentence that includes covered and non-covered offenses," *see, e.g., United States v. Hudson*, 967 F.3d 605, 610-611 (7th Cir. 2020); or (3) some subset of offenses, where the sentences on those charges were interdependently driven or related, *see, e.g., United States v. Mothersill*, 421 F. Supp. 3d 1313, 1319 (N.D. Fla. Nov. 13, 2019). *See* Govt. Opp'n, ECF No. 2416, at 34-35 (citing cases illustrating each alternative).

As part of its sentencing packaging analysis, this Court acknowledges that this Circuit applies a rebuttable presumption that a district judge intends a sentencing package when imposing sentences for multiple counts of conviction. Govt. Opp'n, ECF No. 2416, at 34; *see United States v. Lassiter*, 1 F.4th 25, 31 & 33 (D.C. Cir. 2021), *id.* at 30 (reaffirming that there is a "strong likelihood that where a defendant is found guilty on a multicount indictment. . . the district court will craft a disposition in which the sentences on the various counts form part of an overall plan") (quotation and quotation marks omitted); *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (same).[13] This Court looks next at the D.C. Circuit's recent affirmance in *United States v. Gerald Smith,* 104 F.4th 314 (D.C. Cir. 2024) – a case where the defendant had convictions for, *inter alia*, drug conspiracy and CCE-murder. For context, this Court begins with the underlying opinion in the *Gerald Smith* case, where the Honorable Beryl Howell discussed and rejected the defendant's "sentencing package" argument. In relevant part, Judge Howell opined that:

> Contrary to defendant's assertions, . . . , however, this Court lacks authority to alter the sentences originally imposed by the sentencing judge on his convictions for offenses not covered by Section 404 of the First Step Act. As this Court has previously held, "the narrow circumstances in which the D.C. Circuit has applied the sentencing package doctrine do not support such application in the instant case to defendant's non-covered offense[s]." *Sumler*, 2021 WL 6134594, at *15. Instead, as the Circuit has explained, the doctrine applies only where the sentences on all counts within the "package" are sufficiently "interdependen[t,] . . . such that removal of the sentence on one count draws into question the correctness of the initial aggregate minus the severed element." *United States v. Richard Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006). Unlike in situations where the Circuit has approved of application of the doctrine, *see, e.g., United States v. Lassiter,* 1 F.4th 25, 26 (D.C. Cir. 2021); *Townsend,* 178 F.3d at 568-69, the record provided no indication here that the life sentences imposed on Counts 1 [crack conspiracy] and 3 [RICO conspiracy] in any way related to or were

---

[13] Mr. Nugent proffers that his D.C. Code sentences were, "in fact, run concurrent to his federal sentences," which would seemingly support the notion of a sentencing package. Def.'s Reply, ECF No. 2420, at 17. In this case, Mr. Nugent received a life sentence on the CCE conviction and – except for his mandated consecutive sentence on the Section 924(c) conviction – his convictions for other offenses ran concurrently with that life sentence. *See generally* Sentencing Transcript, ECF No. 2406-2. The Court notes however that the sentencing transcript provides no commentary or other indication of intent underlying this sentencing scheme.

intended to account for the presence or absence of the sentences imposed on defendant's [ ] other convictions. As in *Sumler*, "[t]he covered-offense charges need not have been brought to trial, nor resulted in conviction, for defendant to have been found guilty" of the non-covered offenses. 2021 WL 6134594, at *19, . . . . "[N]ot every judgment involving multiple convictions presents a sentencing package in which vacating the sentence on one count unravels the remaining sentences," *United States v. Palmer*, 854 F.3d 39, 49 (D.C. Cir. 2017), and defendant has failed to persuade otherwise here.

*United States v. Gerald Smith*, Criminal Action No. 95-154-8 (BAH), 2022 WL 10449599, at *12

(D.D.C. Oct. 17, 2022), *aff'd United States v. Gerald Smith,* 104 F.4th 314 (D.C. Cir. 2024).

In *United States v. Gerald Smith*, 104 F.4th at 333-334, the D.C. Circuit noted that:

"[c]ourts have reached different conclusions about whether the First Step Act vests district courts

with this authority" to impose a "new sentence for all convictions because they were part of a

single 'sentencing package.'" The D.C. Circuit compared *United States v. Hudson*, 967 F.3d 605,

610 (7th Cir. 2020) (holding that the First Step Act confers "discretion to reduce a single,

aggregate sentence that includes covered and non-covered offenses") and *United States v.*

*Richardson*, 96 F.4th 659, 666-667 (4th Cir. 2024) (same), with *United States v. Gladney*, 44 F.4th

1253, 1262 (10th Cir. 2022) ("[T]he First Step Act prohibits a district court from reducing the

sentence on a non-covered offense" even if "the covered and non-covered offenses were grouped

together under the Sentencing Guidelines[.]") *Gerald Smith*, 104 F.4th at 334.

In *Gerald Smith, id.*, the D.C. Circuit affirmed the trial court's decision that the defendant

was ineligible for a sentence reduction on his convictions for offenses not covered by Section

404(b) of the First Step Act, including his CCE murder convictions and §924(c) convictions.[14] In

reaching that conclusion, the D.C. Circuit noted that it did not need to "decide whether the First

---

[14] Furthermore, the D.C. Circuit affirmed the district court's denial of a reduction on the Crack Conspiracy and RICO Conspiracy – offenses on which defendant was eligible for a sentence reduction. *Gerald Smith*, 104 F.4th at 334-336.

Step Act authorizes resentencing for covered and non-covered convictions alike when a single sentencing package is imposed" and that was "because [the defendant's] covered . . . convictions were *not* part of a "single package" with his remaining convictions." *Gerald Smith*, 104 F.4th at 334 (emphasis in original). The D.C. Circuit focused on the fact that the defendant in that case was "sentenced to life without parole on his D.C. convictions under a "wholly different legal scheme" from that governing his federal convictions and sentences, and furthermore, his Section 924(c) convictions were required to run "consecutively to his sentences on his other convictions," and the then-mandatory Sentencing Guidelines "required the district court to impose a life sentence" for the CCE-murder convictions.[15]  *Gerald Smith*, 104 F.4th at 334.

This Court agrees with the interpretation of the scope of "sentence packaging" consistent with the analysis set forth in *Gerald Smith*, and as such, finds that the Defendant's D.C. Code second-degree murder conviction may not be packaged with his super CCE conviction, as they are not interdependent. Accordingly, Mr. Nugent is not eligible for a sentencing reduction on his D.C. Code charges. Defendant has asked that "if this Court does not reduce his entire sentence on all counts to time-served, it reduces his sentence to time-served on his federal convictions," Def.'s Mot., ECF No. 2406, at 18, and this Court turns now to Defendant's entitlement to a reduced sentence on those federal convictions.

B. Entitlement

In determining whether an eligible defendant should be granted First Step Act relief, some

---

[15] Defendant disputes the Government's allegation that there is "no indication that the original sentencing court meant for the D.C. Code sentences to be less than life" because, Defendant theorizes that, at the time of sentencing, "[s]entencing judges . . . set sentences with the knowledge that the D.C. Board was likely to release inmates, given good behavior, immediately upon or soon after reaching eligibility." Def.'s Reply, ECF No. 2420, at 18 (citing S. Browning, *Three Ring Circus: How Three Iterations of D.C. Parole Policy Have Up To Tripled The Intended Sentence For D.C. Code Offenders,* 14 Geo. J.L. & Pub. Pol'y 577, 579 (Summer 2016)).

factors for the district court to consider are: "new statutory minimum or maximum penalties; current [Sentencing] Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *United States v. Palmer*, 35 F.4th 841, 851 (D.C. Cir. 2022) (citing *White*, 984 F.3d at 90). Courts may consider also "other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of facts (such as behavior in prison) in adjudicating a First Step Act motion" and are "obligated to consider nonfrivolous arguments presented by the parties," but ultimately, courts exercise their discretion in determining whether to reduce a sentence. *Concepcion*, 142 S. Ct. at 2396.

      1.  New Statutory Minimum or Maximum Penalties

      As previously noted herein, Mr. Nugent would face a new statutory minimum penalty were he to be sentenced today. The applicable mandatory minimum is 20 years, with a maximum of life imprisonment. 21 U.S.C. §848(a). This reduced statutory minimum weighs in favor of a resentencing on the federal convictions.

      2. Current Sentencing Guidelines Range

      Looking to other similar cases from this court, this Court notes that, in the case of Mr. Nugent's co-defendant Kevin Williams-Davis, as with his co-defendant McKinley Board, Judge Hogan employed an "indictment controls approach," which is supported by the *White* case, permitting consideration of judge-found and jury-found quantities. Williams-Davis Resentencing Tr., ECF No. 2419, at 15; *see also* Darryl Williams' Mem. Op., ECF No. 2382, at 12 (finding that the defendant's "mandatory life [sentence] because of a judge-determined, conspiracy-wide drug quantity" was "an extraordinary and compelling reason warranting a sentence reduction"). In *Palmer*, the Honorable Royce Lamberth indicated that the court would "make an independent drug quantity finding," as permitted, because it could not "determine [defendant's] amended guideline

range without doing so." *United States v. Palmer*, 2023 WL 2265255, at * 7 (quoting *Wyche*, 741 F.3d at 1293). Judge Lamberth noted that a district court may base its drug quantity finding "on any ground supported in the record." *Palmer*, 2023 WL 2265255, at *7 (citing *United States v. Miller*, 890 F.3d 317, 328 (D.C. Cir. 2018) (quotation omitted)).[16]

Defendant proffers that Mr. Nugent's guideline calculation is the precise [indictment controls] calculation Judge Hogan used [with co-defendant] Williams-Davis." Def.'s Reply, ECF No. 2420, at 22. Defendant argues that the Court should "use the same method adopted by Judge Hogan for Williams-Davis, who was convicted of identical offenses, responsible for identical amounts of drugs, and subject to the identical sentencing guideline" for CCE. Def.'s Reply, ECF No. 2420, at 22.[17] Based upon the "amounts [of drugs] alleged in the indictment," Defendant calculates Mr. Nugent's current Sentencing Guidelines range as 295-353 months. Def.'s Mot., ECF No. 2406, at 24.

In the case of Mr. Williams-Davis, as is the case here, the "government [was] asking that the Court adopt a different way of calculating the guidelines that would be different and inconsistent

---

[16] In *Palmer*, Judge Lamberth used the PSR's estimate that defendant's offense involved approximately 150 kilograms of crack cocaine, which was consistent with witness testimony during the trial. 2023 WL 2265255, at *7; *see Wyche*, 741 F.3d at 1293 (citation omitted) (noting that the drug quantity "[could not] be inconsistent with the factual determinations made by the original sentencing court").

[17] *See also* Transcript of [McKinley Board] Motion Hearing, ECF No. 2346, at 8-9 (Defendant, through counsel, indicated that "if the Court were to sentence Mr. Board today based on the quantity of non-crack drugs that were found by the jury, the sentence would not yield a life sentence under the guidelines" but instead, "he would be sentenced under the guidelines to approximately 235 months"); at 11 (the Government maintained that the guideline ranges would be "based on the relevant conduct of the offenses," which "involve[d] just massive amounts of PCP" and "would result in a guideline range of a life sentence."), at 14 (Judge Hogan "rule[d] against the Government and [found] that Mr. Board [was] eligible for reduction even though his non-crack offenses could potentially yield the same penalties if he were sentenced today").

with what was done in Mr. Board's case, [that is], [e]ssentially, asking to use the judge-found drug

quantities in the PSR, which the Court did not do for Mr. Board" instead of the indictment quantities

for the guidelines calculations.   Williams-Davis Resentencing Tr., ECF No. 2419, at 4-5

(suggesting a Guideline range of 322-387 months).[18]  Similarly, in the instant case, the Government

asserts that the Guidelines range should be calculated "based on the aggregate quantities for which

the defendant is responsible as determined by the Court at sentencing — *not* the statutory

quantities." Govt. Opp'n, ECF No. 2416, at 45 (emphasis in original, citation omitted).[19]

In response thereto, Defendant asserts however that, "even the government's own method

---

[18] Defendant asserted further that even under the government's proposed Guidelines range of 360
months to life, Mr. Williams-Davis – who had served around 414 months – had nearly completed
the bottom end of that range as well as his 60-month consecutive sentence under section 924(c),
which would be a total of 420 months.  *Id.* at 4-6.  Judge Hogan ultimately reduced Mr.
Williams-Davis's sentence to time served.  Order Reducing Sentence, ECF No. 2376.

[19] The Government disagrees with Defendant's contention that he should be held responsible for
only negligible quantities of PCP and powder cocaine considering *Stoddard's* individualized
approach (as opposed to a conspiracy-wide approach).  Govt. Opp'n, ECF No. 2416, at 27-32.
"Although the individualized approach requires the jury to find 'the quantity of drugs attributable
to (*i.e.,* foreseeable by) an individual defendant,'" *Stoddard*, 892 F.3d at 1219, the Government
argues that a "defendant's liability extends beyond the transactions in which he personally
participates," *see id.* at 1221 (discussing *United States v. Law*, 528 F.3d 888, 906 (D.C. Cir.
2008)).  Govt. Opp'n, ECF No. 2416, at 27-28.  In support of this proposition, the Government
cites to a 1997 D.C. Circuit decision whereby co-defendant Derrin Perkins was held liable under
co-conspirator liability for "all the drugs distributed by the R Street Crew."  *United States v.
Thomas*, 114 F.3d 228, 236, 255-57 & n.12 (D.C. Cir. 1997).  Gov't Opp'n, ECF No. 2416, at 28,
at 28-30 (citing additional D.C. Circuit cases from the 1990's).  Defendant contends that these
cases "miss the mark" as the "entire basis of Judge Hogan's reasoning was that a finding of
liability under the guidelines, made by the court by a preponderance of evidence, is no longer
sufficient to be guilty [for a defendant] to be guilty of the enhanced crime under §848(b)."  Def.'s
Reply, ECF No. 2420, at 9; *see also* Darryl Williams Mem. Op., ECF No. 2382, at 10-11
(discussing an individualized determination of drug quantity and rejecting the conspiracy-wide
approach).  Furthermore, the Defendant asserts that citing D.C. Circuit cases from the 1990's is
not persuasive as "at that time, it was the judge and not the jury that made the drug quantity
finding by a preponderance of the evidence."  Def.'s Reply, ECF No. 2420, at 9.

does not result in a guidelines range of life because "the drug quantity table today, unlike at sentencing in 1993, is capped at 38" and "no matter the converted drug weight, Mr. Nugent's offense level . . . is 38, after which four levels are added . . . for a total offense level of 42." Def.'s Reply, ECF No. 2420, at 23. "A total offense level of 42 at Criminal History Category I results in a range of 360 months to life imprisonment, to which 60 months is added for [defendant's] §924(c) offense." *Id.* Moreover, in his Motion, Defendant notes that he has been imprisoned for approximately 406 months [adjusted by to this Court, to reflect a more current estimate] and as of the filing of his Motion, he "would have accrued over 57 months of good time credit had he originally been sentenced to a term of years,[20] *id.*, and this would exceed 420 months of time served.

Consistent with Judge Hogan's opinions in Mr. Nugent's co-defendants' cases, this Court adopts an indictment controls approach, and as such, finds that the Sentencing Guidelines range proposed by Defendant applies, and this Guidelines range factor weighs in favor of resentencing on Mr. Nugent's federal convictions. Furthermore, as noted by Defendant, even if this Court were to adopt the Guidelines range proposed by the Government, which results in a sentence of 420 months to life, in this case, Defendant has already served at least 406 months (almost 34 years).

3. Factors pursuant to 18 U.S.C. §3553(a)

The factors to be considered by the Court, as set forth in 18 U.S.C. Section 3553(a), include the nature and circumstances of the offense, Mr. Nugent's history and characteristics, the need for the sentence imposed, and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C.

---

[20] Defendant notes that the government does not address that his "label as the leader of the conspiracy does not obviate the need for the district court [to] make individualized findings regarding 'the scope of his agreement to the conspiratorial conduct  and the foreseeability of his co-conspirators' conduct,'" which was not done at sentencing. Def.'s Reply, ECF No. 2420, at 23 n.11 (citing *Palmer*, 2023 WL 2265255, at *6 (quoting *United States v. Wyche*, 741 F.3d 1284, 1292 (D.C. Cir. 2014) (internal citations and quotations omitted)).

§3553(a)(1)-(2), (6).  As the Supreme Court has stated regarding a Section 3553(a) analysis, "a district court is [not] required to articulate anything more than a brief statement of reasons," *Concepcion*, 142 S. Ct. at 2404.

a.  Nature and Circumstances of the Offense

The Government contends that "Defendant committed numerous remarkably serious crimes that devastated individuals, families, and the community," including involvement in two murders.  Govt. Opp'n, ECF No. 2416, at 39.  The Government further attributes to Defendant the gang violence associated with his involvement with the R Street Crew.  *Id.* at 40.  The Government notes that Defendant's offenses were "exceptional in terms of the quantities of drugs he trafficked and the violence he employed[.]"  Govt. Opp'n, ECF No. 2416, at 45 n.31.  Defendant doesn't dispute the severity of his criminal acts or the repercussions thereof, and accordingly, this factor weighs against Defendant being resentenced.

b.  History and Characteristics of Defendant

The Government indicates that "Defendant has a negligible criminal history apart from the eight-year span he carried out the instant offenses[.]"  Govt. Opp'n, ECF No 2416, at 41.  The conspiracy that Mr. Nugent was involved in occurred between 1983 and 1991, and Mr. Nugent turned 18 years old on April 28, 1983, and he was arrested at age 25.  *See* Def.'s Mot., ECF No. 2406, at 4.  Defendant indicates that there were "three major inflection points in the younger Mr. Nugent's life that are key to understanding his path into the R Street gang," namely, the loss of sight in his left eye, which subsequently derailed his dream of joining the Navy, and the death of his younger brother.  Def.'s Mot., ECF No. 2406, at 27.  Regarding the loss of his eye, at the age of 14, Mr. Nugent was with friends at a McDonald's, where his friend snatched a purse from a patron; McDonald's employees chased the boys and hit Mr. Nugent in the left eye with a rock,

which resulted in a detached retina and subsequent blindness in that eye. PSR¶113.[21] Mr. Nugent

graduated high school, with good grades and an outstanding citizenship award.[22] PSR ¶114. He

had no juvenile arrests or connection to the justice system. *Id.* At age 17, he took the physical test

for joining the Navy but was told he could not because of his detached retina. *Id.* Responding to

this derailment of his plan, Mr. Nugent indicates that he didn't have a backup plan and the "only

mentality [he] did have around [him] was thugs" when he was "confused, lost, and mad at the

world." Def.'s Mot., ECF No. 2406, at 28. Then, in 1989, during Defendant's involvement with

the R Street gang, Mr. Nugent's younger brother Sean, "who had followed him into the drug trade,

was killed [by a rival drug group] and died in his arms." *Id.* at 28.

The Government argues that Defendant's crimes were motivated by his "deliberate choice

to oversee a criminal enterprise for eight years" and he "repeatedly declined opportunities to change

his path, including when he was arrested for murder in 1985, . . . and when his brother was killed

and he was arrested for another murder in 1989." Govt. Opp'n, ECF No. 2416, at 47 (internal

citations omitted). Furthermore, while the Government acknowledges Defendant's lost career

aspirations due to his eye injury, Defendant "did not face the sort of hardships routinely seen in the

lives of other defendants" as he had a "loving family" and did "well in school" and did "not suffer

from any serious mental health or substance-abuse issues." *Id.* (internal citations omitted).

Reviewing the record in this case, the Court finds that Defendant's history and

characteristics (including his youth at the time of his involvement in criminal activity balanced

against the length of his involvement) weigh in equipoise, neither favoring nor disfavoring

---

[21] Mr. Nugent was not the person involved in snatching the purse, and McDonald's later entered a settlement with Mr. Nugent because its employees acted wrongfully. PSR¶113.
[22] The Government notes that Mr. Nugent attended three semesters of college while participating in the conspiracy. Govt. Opp'n, ECF No. 2416, at 42 n.26.

resentencing.

    c.  Defendant's Post-Sentencing Conduct and Plan

While incarcerated, Mr. Nugent has had a minimal disciplinary history of 3 incidents in over 30 years. *See* Def.'s Mot., ECF No. 2406, Ex 3 [BOP records], at 19-20 (indicating that the only violent incident occurred in 2000, for fighting with another inmate; and there were nonviolent incidents in 2002 for failing to stand count and in 2020 for possessing a cell phone).   The Government argues that Mr. Nugent's infraction for possession of a cell phone is serious because "the risks presented when inmates possess cell phones and cell phone chargers are patent."   Govt. Opp'n, ECF No. 2416, at 42 (citing *United States v. Blake*, 288 Fed. App'x. 791, 794 (3d Cir. 2008).[23]

Defendant focuses on two of the influential aspects of his growth in prison, which are "his faith and his education." Def's Mot., ECF No.2406, at 29. Defendant explains that he has "become a [Muslim] faith leader in his community, teaching respect and accountability to others in prison" and in 2005, "he was chosen as an Iman by other inmates." *Id.* at 30. Regarding education, he has "completed thousands of hours of educational programming, of which 1,850 hours was in the Department of Labor's custodial maintenance program and he has worked while incarcerated. *Id.*; *see* Ex. 3 [BOP records regarding educational data], at 13-14, and at 15 [Inmate Profile]. Mr. Nugent has earned an Associate of Science Degree in Business from Glenville State College, graduating magna cum laude, ECF No. 2406, at 31, and "his future plans include furthering his education, helping his children with raising his grandchildren, and being a dutiful son." *Id.* He

---

[23] While the Government focuses on the use of cell phones to aid in escapes and coordinate criminal or violent acts within the facility, Govt. Opp'n, ECF No. 2416, at 42-43 n. 28 (citations omitted), in this case, Mr. Nugent was in his cell with the window covered, masturbating while using the cell phone for a video call with a woman. *Id.* at 42.

would like to study cybersecurity at a community college, and he "has a job offer from Stericycle Inc., a waste disposal service that is committed to hiring returning citizens." *Id.; see* Ex. 6 [Employment Offer]. Accordingly, upon consideration of the record in this case, the Court finds that Defendant's conduct while incarcerated and his post-sentencing plan weigh in favor of resentencing him on the federal convictions.

      d.  Need for Sentence Imposed

Mr. Nugent notes that "the BOP has itself recognized [his] educational attainment and minimal discipline, placing him in a "low" security classification, which is an impressive feat for an individual sentenced to life." Def.'s Mot., ECF No. 2406, at 33; Ex. 3 [Inmate Profile], at 11. Defendant notes that persons with life sentences are "sent to "high" security institutions, and only if they maintain good conduct and constant programming might the BOP use its discretion to waive what are known as "public safety factors," which then allows a security classification to be lowered." Def.'s Mot., ECF No. 2406, at 33; *see United States v. Lederzma-Rodriguez*, 472 F. Supp. 3d 498, 508 n.6 (S.D. Iowa) ("The BOP generally gives defendants with life sentences a 'high' security classification unless an administrator waives certain public safety factors.") (citation omitted). Defendants asserts that multiple courts have noted the significance of an individual serving a life sentence being at a lower-security institution as further proof of rehabilitation. Def.'s Mot., ECF No 2406, at 33-34 (string citing cases). Defendant relies also on empirical evidence whereby lower recidivism is related to the extent of an inmate's educations achievements and the inmate's age.

In contrast, the Government opines generally that reducing Mr. Nugent's sentences would "greatly undermine the need 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as to 'afford adequate deterrence to

criminal conduct.'"   Govt. Opp'n, ECF No. 2416, at 43.   The Court finds however that the

Government's statement ignores Mr. Nugent's classification as a low security risk and any statistics

on recidivism lessening with education or age.   Furthermore, Mr. Nugent has served 34 years in

prison, which could encompass the 60-month Section 924(c) consecutive sentence and still have

Mr. Nugent serving 30 plus years for the CCE conviction (since he did not accrue good time credit).

As such, the Court finds that these additional factors highlighted by the Government do not weigh

against resentencing, particularly considering Defendant's educational attainments, his age at the

time of his criminal activity,[24] his current age, the length of his sentence, and his classification as a

low security risk.

    e.   Need to Avoid Unwarranted Sentencing Disparities

    As previously mentioned, Mr. Nugent is the "sole remaining member of the R Street Crew

in prison, although he was one of eight co-defendants originally sentenced to life imprisonment."

Def.'s Mot., ECF No. 2406, at 25 (noting that Williams-Davis and Darryl Williams were also

identified as leaders, and Williams-Davis was convicted of offenses identical to Mr. Nugent, as

well as additional offenses, but neither co-defendant is incarcerated currently because Judge Hogan

granted Williams-Davis's Section 404 motion and Darryl William's Section 3582(c)(1)(A)

motion).[25]

---

[24] The Government notes generally that "defendant's age at the time of his offense would provide only limited support for a discretionary sentence reduction if one were available." Govt. Opp'n, ECF No. 2416, at 47.

[25] Defendant looks also to the Section 404 grants awarded to Antone White and Eric Hicks, where Judge Howell considered and compared "the scale of Williams-Davis's and Board's conspiracy; the parallel allegations of violence and murder (in Williams-Davis's case, proven beyond a reasonable doubt); and the defendants' roles at or near the top of their trafficking organization [which] situate[ed] them in a similar position to White, and even more so to Hicks, whose behavioral record while incarcerated closely align[ed] with theirs." *United States v. White*, No. CR 93-97 (BAH), 2022 WL 3646614, at *22 (D.D.C. Aug. 24, 2022).

The Government argues however that the alleged disparity between Mr. Nugent's sentence and his co-defendants' sentences does not weigh materially in favor of reducing his sentence. The Government attempts to distinguish the roles played and circumstances surrounding six of Mr. Nugent's co-defendants. Govt. Opp'n, ECF No. 2416, at 48 n. 33 (noting less serious charges for co-defendants Donnell Williams, Derrin Perkins, and McKinley Board; status as juveniles for co-defendants Andre Williams and Gregory Thomas; and that co-defendant Darryl Williams was "intellectually disabled"). In the case of co-defendant Williams-Davis, the Government comments that the reasoning that resulted in his release a "was, at best, incomplete." Govt. Opp'n, ECF No. 2416, at 48-49. The Government notes also that resentencing Mr. Nugent would create a disparity with other super CCE defendants "who are similarly ineligible for §404 relief due to trafficking quantities of narcotics other than crack cocaine, thereby requiring the court to impose a life sentence." *Id.* at 49. But Defendant asserts that "[a]ny concern over disparities does not require the "strong remedial statute[ ]" reflected in Section 404 to be more parsimonious and encompass fewer offenses than required by its text." Def.'s Reply, ECF No. 2420, at 10 (quoting *White*, 984 F.3d at 90).

As far as a comparison with co-defendant Williams-Davis, Defendant explains that both: (1) were convicted of "identical offenses" and "engaged in substantially similar conduct during the crimes;" (2) have "stellar institutional records;" and (3) had a "grid score of 2" when they went before the Parole Commission, which indicated "that parole should be granted at this time." Def.'s Reply, ECF No. 2420, at 18. However, when Mr. Williams-Davis had a Parole Commission hearing in 2005, he was [still] serving a life sentence, and the hearing examiner noted that because he would "never be paroled to commit any other offense," he would grant parole on the D.C. Code sentence. *Id.* at 20. In contrast, with Mr. Nugent, the hearing examiner noted that he had filed a

motion for compassionate release and/or sentence reduction under the First Step Act of the non-paroleable SRAA LIFE sentence" and if paroled, he would be in the community," and accordingly, he was denied parole.  *Id.* at 20.  Considering the record in this case, this Court finds that the disparities between Mr. Nugent and his co-defendants (none of whom are now incarcerated) weigh in favor of a resentencing on Mr. Nugent's federal convictions.

      4.  Relevant Intervening Changes in Law

      As the *Conception* case makes clear, this Court may apply intervening changes in law when exercising its discretion pursuant to Section 404.  Specifically, courts should consider the mandatory consecutive sentence required by §924(c) in fashioning an appropriate sentence on the remaining count(s) of conviction.  *Dean v. United States*, 137 S. Ct. 1170, 1176-77 (2017). Defendant argues that such changes in sentencing law since his sentencing make it feasible that the Court could have "gone as low as the statutory minimum on the federal counts of conviction in light of the 60-month consecutive term for Mr. Nugent's §924(c) offense," Def.'s Mot., ECF No. 2406, at 22.  Defendant relies also on statistics from D.C. showing that only 29 percent of offenders were sentenced within the advisory range in fiscal year 2021, while 50.4 percent were given a variance.  Def.'s Mot., ECF No. 2406, at 22-23 (citation omitted).

      Defendant explains that "[i]n any event, even absent a reduction on the non-§924(c) counts to account for the mandatory consecutive sentence on Count 57, Mr. Nugent has served far longer than the 295–353 month advisory range that today would apply to the charged drug weights on the basis of the law in *Apprendi/Alleyne, Stoddard* and Section 404." Def.'s Mot., ECF No. 2406, at 23-24 (calculating offense level and Guideline range based on the amounts alleged in the Indictment).  Defendant concludes that "the watershed changes in sentencing law detailed [by Defendant] support a reduced sentence, especially given that Mr. Nugent has already served the

sentence called for by the guidelines under the law as it is today[.]" Def.'s Mot., ECF No. 2406, at 24-25. The Court finds that these intervening changes in law weigh in favor of Defendant's entitlement to a resentencing on his federal convictions.

In sum, in its discretion, this Court concludes that the 18 U.S.C. §35553(a) sentencing factors demonstrate that a sentencing reduction is appropriate for Mr. Nugent. *See Concepcion*, 142 S. Ct. at 2401 ("Nothing in the text and structure of the First Step Act expressly, or even implicitly overcomes the established tradition of district courts' sentencing discretion.")

## IV. CONCLUSION

Mr. Nugent is eligible for a reduced sentence under Section 404 of the First Step Act, and this Court will exercise its discretion to reduce Mr. Nugent's sentence for his convictions for the CCE charge and the Section 924(c) charge to time served. Defendant's Motion is otherwise denied. An Order consistent with this Memorandum Opinion shall issue on this date.

DATE: Oct 3, 2024

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE