UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTHONY NUGENT,<br><br>Defendant. | Crim. Action No. 91-559-02 (CKK) |

MEMORANDUM OPINION
(March 7, 2025)

In 1993, Defendant Anthony Nugent ("Defendant" or "Mr. Nugent") was sentenced to life in prison after a jury found him guilty of drug trafficking and firearms offenses stemming from his participation in a large-scale illegal drug operation that occurred in Washington, D.C. and spanned from May 1983 through March 1991. Mr. Nugent turned 18 years old on April 28, 1983, and he was arrested at age 25.   After serving approximately thirty-four years in prison, Mr. Nugent moved for a reduction in his sentence (on his four remaining charges) based on Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, §404, 132 Stat. 5194.  On October 3, 2024, this Court granted Mr. Nugent's motion in part and denied it in part.  *See* Memorandum Opinion, ECF No. 2426; Order, ECF No. 2427. More specifically, the Court found that Mr. Nugent was eligible for a reduced sentence under Section 404 of the First Step Act, and this Court exercised its discretion to reduce Mr. Nugent's life sentence on his conviction on the Continuing Criminal Enterprise ("CCE") charge (the covered offense), and his 5-year sentence on his Section 924(c) charge to time served.  Defendant's Motion was otherwise denied regarding his sentence of "15 years to life" on his two Second Degree Murder charges (Counts 7 and 55).

1

Relying on a case from the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), this Court found that these two non-covered D.C. Code offenses were not interdependent with the CCE conviction, and accordingly, the sentencing packaging doctrine did not apply.

Pending before this Court is Mr. Nugent's [2430] Motion to Reduce Sentence under The Incarceration Reduction Amendment Act, as amended by the Second Look Amendment Act, D.C. Code §24-403.03, (hereinafter, the "IRAA"), and the Government's [2432] Response thereto, which indicates that the Government "does not oppose a sentence reduction in this matter." Govt. Resp., ECF No. 2431, at 1. The IRAA applies to defendants, such as Mr. Nugent, who committed offenses before reaching the age of 25, where such defendant was sentenced to an indeterminate sentence and has served at least 15 years in prison. D.C. Code §24-403.03(a) & (a)(1). On March 6, 2025, this Court held "a hearing on the motion at which the defendant and the defendant's counsel [were] given an opportunity to speak on defendant's behalf," as required by D.C. Code §24-403.03(b)(2).

Although Defendant's Motion is ultimately unopposed by the Government, D.C. Code §24-403.03(a)(2), requires also that this Court consider the factors set forth in subsection (c) therein to determine that "the defendant is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification" and "issue an opinion in writing stating the reasons for granting or denying the application under this section." D.C. Code §24-403.03(b)(4). Accordingly, the Court's analysis of those relevant factors is set in this Memorandum Opinion.

I. Analysis of D.C. Code §24-403.03(c) Factors

In determining whether to reduce Defendant's term of imprisonment, the Court shall

2

consider the following factors:

>  (1) the defendant's age at the time of the offense;
>  (2) the history and characteristics of the defendant;
>  (3) whether defendant has substantially complied with the rules of his institution and whether he has completed any educational and/or vocational programming;
>  (4) any report or recommendation by the U.S. Attorney;
>  (5) whether defendant has demonstrated maturity, rehabilitation and fitness to reenter society;
>  (6) any statement by a victim of the offense or the family member of a deceased victim;
>  (7) any physical, mental, or psychiatric examination reports;
>  (8) defendant's family circumstances at the time of the offense, including any history of trauma or abuse;
>  (9) defendant's role in the offense and whether others were involved;
>  (10) the diminished culpability of juveniles and person under the age of 25; and
>  (11) any other information deemed relevant.

D.C. Code §24-403.03(c). In this case, the factors numbered 1, 2, 3, 5, 8, 9, and 10 are relevant to this Court's inquiry. To the extent that the Government's response to Defendant's Motion is considered a "report or recommendation by the U.S. Attorney," per factor 4 above, that factor weighs in favor of granting Defendant's Motion because the Government indicates that it does not ultimately oppose the requested sentence reduction. The Court turns now to an analysis of those factors.

    A. Factors One (Age) and Nine (Defendant's Role in the Offense)

Mr. Nugent and co-defendants Kevin Williams-Davis and Darryl Williams were charged with the murder of Alton Clea, while Mr. Nugent and Mr. Williams-Davis were charged with the murder of Francis Scrivner. Mr. Nugent proffers that "[b]oth Alton Clea and Francis Scrivner were involved in the drug trade on R Street Northeast." Def.'s Mot. to Reduce Sent., ECF No. 2430, at 24. As follows, Defendant describes what happened leading up to Mr. Clea's murder. "Alton Clea's brother Leon [whom Mr. Nugent describes as a "bully"] distributed drugs on R Street," and at the time of the April 1985 incident, Leon was "21 years old, older and bigger than both Mr.

3

Nugent, 19, and [Mr. Nugent's brother] Sean [Martin], only 15." *Id.* at 25. Mr. Nugent asserts that "Leon told his brother Alton that Sean—who was skinny, and young, and not a leader or enforcer of the group—had told Alton, a grown man with a gun, that the Clea brothers couldn't sell on the corner." Def.'s Mot. to Reduce Sent., ECF No. 2430, at 25. Mr. Nugent told Leon to leave his brother alone, and they got into a fistfight. Leon Clea and his brothers, Alton and Anton, returned later to the same area to retaliate, and Mr. Nugent became involved in another fistfight with Leon Clea. With a gun that belonged to Kevin Williams-Davis, Darryl Williams "walked over to Alton Clea, put the gun in his face, and pulled the trigger." Govt. Opp'n to Def.'s Supp. Mot. for Imposition of Reduced Sentence Under Section 404, ECF No. 2416, at 6; PSR ¶51; *see also United States v. Williams-Davis*, 90 F.3d 490, 498 (D.C. Cir. 1996).

Regarding the circumstances leading to Mr. Scrivner's death, Mr. Nugent notes that the Bailey family was another group that sold drugs on R Street, and on April 5, 1989, Girard Bailey was found dead, and there was a rumor that Sean Martin (Mr. Nugent's brother) and Gregory Thomas had killed him although Sean denied that. Def.'s Mot. to Reduce Sent., ECF No. 2430, at 26. In turn, the Bailey family sought revenge by hiring two hit men who targeted Greogry Thomas and Sean Martin, ultimately shooting both and killing Sean Martin, while Mr. Nugent was present. *Id.*; PSR ¶¶58-59. Thereafter, Mr. Nugent [age 23] and his crew planned retaliation. The following day, Mr. Nugent approached an auto body shop and fired repeatedly at Fred Bailey, an individual who was hurt but not killed. After Mr. Bailey ran into an office inside the auto body shop, Mr. Nugent and others ran into the shop and began shooting. Mr. Scrivner, an employee of the shop, was struck by a bullet and killed. Govt. Opp'n to Def's Supp. Mot. for Imposition of Reduced Sentence Under Section 404, ECF No. 2416, at 7; PSR ¶¶24-25; *see also United States v. Williams-Davis*, 90 F.3d at 498. The Court notes that Mr. Nugent did not fire the fatal shots in either case,

4

but he has accepted responsibility for his actions in connection with the murders and continues to "agonize over the choices [he] made in the past" . . . during "the darkest period of [his] life." Def.'s Mot. to Reduce Sent., ECF No. 2430, at 27. While acknowledging the seriousness of these offenses, the Court finds that Mr. Nugent's age when he committed the offenses and his role in the offenses – including the circumstances underlying both shootings and Mr. Nugent's regret in connection with both – weigh in favor of reducing his sentence.

> B. Factors 2 (history and characteristics), 8 (family and community circumstances at the time of the offense), and 10 (diminished culpability)

The Government has indicated previously that Mr. Nugent has "a negligible criminal history apart from the eight-year span he carried out the [ ] offenses" on which he was convicted. Govt. Opp'n, ECF No. 2416, at 41. Defendant asserts that he "grew up surrounded by drugs and violence in the Eckington neighborhood of D.C., with no biological father present but with the responsibility to protect and care for his home and younger brother while his mother worked nights and his stepfather lived elsewhere during the week. Def.'s Mot., ECF No. 2430, at 10. Mr. Nugent notes that, during his childhood, to freely go anywhere within his neighborhood, the kids "had to stick together as a group" for protection because fights were common. *Id.* at 14-15. Mr. Nugent's group included his brothers Donald and Sean as well as lifelong friends Kevin Williams-Davis and Darryl Williams. *Id.* at 15. As a child and young teen, he regularly witnessed fistfights, robberies, overdoses, and murders, and he himself was the victim of a robbery. *Id.*

As previously noted by Mr. Nugent, there were "three major inflection points" that are key to him becoming involved in criminal activity. Mem. Op., ECF No. 2426, at 27-28. First, there was an incident that caused him to lose sight in his left eye that happened when Mr. Nugent was 14 years old. He was with friends at a McDonalds, and one of his friends snatched a purse from a patron. Employees from McDonalds chased the boys and one of them hit Mr. Nugent in the left

5

eye with a rock, which resulted in subsequent blindness in that eye. PSR ¶113. Second, Mr. Nugent had dreamed of being in the military since he was a child, and as such, he elected to attend a vocational high school to learn welding. *Id.* at 19. He graduated in June 1983, with no juvenile arrests, and he earned an outstanding citizenship award. *Id.* But Mr. Nugent's plan to join the Navy was thwarted when he took the physical test and was told he was unfit for service because he had a detached retina in his left eye. At age 17, Mr. Nugent had no backup plan and "the only mentality [he] did have around [him] was thugs [and he] was confused, lost and mad at the world" which propelled him "to the street." Def.'s Mot., ECF No. 2430, at 20. Third, as previously mentioned, he watched his brother Sean (who had followed him into the drug trade) die after being shot by a rival drug group. These are events that shaped Mr. Nugent during his teens and early twenties.

Mr. Nugent notes further than he began using marijuana at age 14 and started drinking alcohol at that time. At age 17, he began using cocaine, with his usage increasing after his brother's death. Mr. Nugent's "substance abuse was normalized in his neighborhood[.]" Def.'s Mot., ECF No. 2430, at 20-21. Defendant, in his Motion, concludes that "the accumulated trauma from these [aforementioned] childhood experiences are also important factors in the devastating choices he made as an emerging adult." Def.'s Mot., ECF No. 2430, at 22; *see generally* at 21-24 (discussing how drug abuse and toxic stress affect brain development). Defendant proffers that the Court is now able to view Mr. Nugent's actions "through the lens of over twenty years of scientific advancements and a comprehensive understanding of Mr. Nugent's social history and background." Def.'s Mot., ECF No. 2430, at 9. While neither Defendant's social history nor his background excuses his actions, "they provide helpful context for the violence and instability he faced as a young boy, impressionable adolescent, and emerging adult." *Id.*

On balance, in the context of this Court's application of the IRAA, Mr. Nugent's history

and characteristics, coupled with his family and community circumstances at the time of the offenses, and his diminished culpability due to age and trauma, weigh in favor of a sentence reduction.

### C. Factor 3 (substantial compliance while incarcerated and taking advantage of educational and vocational programs)

While incarcerated, Mr. Nugent has had a minimal disciplinary history of 3 incidents in over 30 years. *See* Def.'s Mot., ECF No. 2430, at 31-32, Ex 5 [BOP records], at 16-17 (indicating that the only violent incident occurred in 2000, for fighting with another inmate; and there were nonviolent incidents in 2002 for failing to stand count/interfering with taking count, and in 2020 for possessing a cell phone). Mr. Nugent is classified as a "low" security inmate, even while serving a life sentence, Def.'s Mot., ECF No. 2430, at 32-22.

Defendant focuses on two of the influential aspects of his growth in prison, which are "his faith and his education." Def's Mot., ECF No. 2430, at 29. Defendant explains that his Muslim faith has grown and influenced his "respect for the law" and "people [being] held accountable for breaking the law." *Id.* at 30. Mr. Nugent has "become a [Muslim] faith leader in his community, teaching respect and accountability to others in prison" and in 2005, "he was chosen as an Iman by other inmates." *Id.* Regarding education, he has "completed thousands of hours of educational programming, of which 1,850 hours was in the Department of Labor's custodial maintenance program and he has worked while incarcerated, first as an orderly and then, as a barber. *Id.* at 30-31; *see* Ex. 5 [BOP records on Education Data and Inmate Profile]. Mr. Nugent has earned an Associate of Science Degree in Business from Glenville State College, graduating magna cum laude, ECF No. 2430, at 31. Accordingly, upon consideration of the record in this case, the Court finds that Defendant's conduct while incarcerated – specifically, having a minor disciplinary record

and engaging in extensive educational/vocational training — weighs in favor of a sentence reduction.

### D. Factor 5 (maturity, rehabilitation, and fitness to reenter society)

Defendant proffers that:

> In his 34 years in prison, Mr. Nugent has demonstrated again and again that he has grown and changed. He now recognizes how his actions hurt his own family: "The hurt and shame I brought to my family because of the crimes I committed has brought irrevocable harm to them. Not being there for my children and parents has prevented [me] from being a good father and son." To atone, he has become a person of integrity and strength, a religious leader teaching respect and nonviolence; an avid learner with an Associate of Science Degree in Business; and a strong and present son, brother, father, and friend.
>
> Mr. Nugent comes before this Court a mature, resilient, and reflective 59-year-old man who dreams of being reunited with family and educating others from his experiences.

Def.'s Mot., ECF No. 2430, at 28.

Defendant notes further that "[a]ll available empirical evidence underscores that [he] has a low risk of recidivism," and that the Bureau of Prisons has characterized it as "minimum" risk. *Id.* at 33, 34 (noting that "[a]t 59 years old, he is almost a decade older than the age at which the Sentencing Commission has found that [the] recidivism rate begins to decline substantially") (internal quotation marks and citation omitted). Defendant emphasizes also that he has completed educational programming that is more extensive than that completed by the average inmate, and this "will allow him to pursue further education and a career upon release, which will only serve to further decrease the already low risk he has of ever recidivating." *Id.* at 34.

To demonstrate his maturity and rehabilitation, Defendant focuses on character statements made by his close family members and friends, noting, for example: (1) that he has "developed into a great person possessing a great deal of integrity"; (2) "I have seen the regret and remorse in Anthony's eyes when visiting him"; (3) "he has become a model prisoner and . . . he will be a model citizen of society if released from incarceration": (4) "Anthony has gained knowledge and

8

wisdom that has afforded many of the youth he's worked with in the prison system. . . .Please allow Anthony another chance at freedom, he has a village waiting to support him." Def.'s Mot., ECF No. 2430, at 36-37 (citations omitted). Defendant asserts that "[t]here are close to 20 letters written on Mr. Nugent's behalf by his loved ones and community members [that] convey that, despite his serious crimes, he is a loving and caring individual with strong community support." *Id.* at 40.

Mr. Nugent's release plan includes "furthering his education, helping his children with raising his grandchildren, and being a dutiful son." *Id.* at 41. When released, he intends to live with his mother, who has a room ready for him. *Id.* He also plans to attend "P.G. Community College" to complete a "cybersecurity program" at night while he works at "Stericycle Inc., a waste disposal service that is committed to hiring returning citizens" during the day. *Id.* at 42. Additionally, he "intends to provide his parents, children, and grandchildren with as much support as he can give." *Id.*

At the hearing, the Court asked Defendant to expound upon his maturity, rehabilitation, and fitness to reenter society. Mr. Nugent, through counsel, noted his "incredible circle of support," and he indicated that he had been a leader while in prison, based, in part, on his faith and commitment to education. Defendant asserted that he is committed to respecting the rule of law and being accountable for his actions. The Court next asked Mr. Nugent if he wished to make a personal statement, which he did. Mr. Nugent mentioned being a father figure to young men while he has been incarcerated. He also discussed his desire to support his extended family, upon release, and to better himself through education and service to others. Mr. Nugent's statement demonstrated his personal growth and that he has the mindset necessary to succeed, and the Court commended Mr. Nugent for making good use of his time to further his education and training, while incarcerated.

Finally, the Court asked the Government to state its position. The Government noted and this Court agrees that Mr. Nugent's charges were serious insofar as his actions, along with the actions of others, resulted in two men losing their lives. The Government indicated that while these victims' rights must be weighed by the Court, the balance of factors favor granting Mr. Nugent's Motion, and accordingly, for that reason, the Government does not oppose Defendant's Motion. Considering all the information before this Court, the Court finds that Mr. Nugent has demonstrated the maturity, rehabilitation, and fitness to reenter society sufficient to warrant a sentence reduction.

In sum, all relevant factors pursuant to D.C. Code §24-403.03(c) weigh in favor of Mr. Nugent's sentence reduction to time served, which is ultimately unopposed by the Government. Accordingly, the Court finds that Mr. Nugent is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification to time served on Mr. Nugent's sentence of 15 years to life for his two D.C. Code offenses (Counts 7 and 55). A separate Order and an Amended Judgment accompany this Memorandum Opinion.

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE